Argued April 1, affirmed April 22, petition for
rehearing denied June 9, 1964

# DEWITZ *v*. COLUMBIA RIVER PAPER CO.

391 P. 2d 613

*Philip A. Levin,* Portland, argued the cause for appellant. With him on the briefs were Pozzi, Levin & Wilson, Portland, and Brown & Kettleberg and Milton O. Brown, Portland.

*Edwin J. Peterson,* Portland, argued the cause for respondent. With him on the brief were James W. Morrell and Tooze, Powers, Kerr, Tooze & Morrell, Portland.

Before McALLISTER, Chief Justice, and ROSSMAN, SLOAN, DENECKE and LUSK, Justices.

DENECKE, J.

Plaintiff seeks damages for personal injuries incurred when he was struck by a materials carrier while in defendant's warehouse. Plaintiff appeals from a judgment entered upon a verdict for the defendant. Plaintiff contends that the court should have instructed the jury that the defendant was negligent as a matter of law.

The defendant stores its paper products in its ware-

house in which the cartons containing the paper are stacked on skids. The stacks form parallel and perpendicular aisles. A skid is a materials handling device about three or four feet long and slightly less in width. The skids, with the stacks of cartons, are moved in and out of the warehouse by a vehicle having the trade name "Transporter" and commonly known as a "lizard." The front part of the lizard is run under the skid and then is raised, lifting the skid off the floor. The lizard then can carry the skid and its cartons. At one end of the lizard is its motor, controls and a small platform, about one foot off the ground, upon which the operator can stand. The machine can be operated with the load in front or in back. Plaintiff testified he had operated lizards for "quite awhile" and the accepted practice was to operate lizards with the load in front. The operator can also walk alongside the lizard as it moves because its speed is only about three miles per hour.

On the day of the accident plaintiff, a truck driver, was sent by his employer to defendant's warehouse to pick up a truck load of paper cartons. Plaintiff loaded his truck by picking up skids inside the warehouse with a lizard, hauling the skids into his truck, and depositing them there. Plaintiff was in the main aisle of the warehouse, maneuvering his lizard under a skid, when he was struck by a lizard operated by defendant's employee, Dickensheet. Plaintiff's back was to Dickensheet and he was on the right side of the aisle when viewed from the direction from which Dickensheet was coming. Plaintiff never saw Dickensheet or his lizard until after he was struck.

The main aisle was about 30 to 35 feet wide. It was about 300 to 600 feet long. Dickensheet had traveled

almost its entire length before striking Dewitz. Dickensheet's load was about six inches higher than his eye level. The cartons extended approximately a foot or a foot and one-half beyond the sides of the skid. The load was in front and the driver was standing on the left side of the platform in the rear. He was traveling near the middle of the aisle but on the right side. He could see the aisle ahead all the way to its end, but he could not see the entire aisle area ahead of the lizard. He saw Dewitz only after he had struck him.

■ The case was submitted to the jury on three specifications of negligence: failure to keep a proper lookout, failure to stop or swerve to avoid hitting plaintiff, and loading the lizard in a manner that obstructed the driver's vision. Plaintiff's position is that it is negligence as a matter of law to drive a moving vehicle without being able to see what is ahead of the vehicle.

We hold that the lizard driver's negligence was properly left to the jury to determine. We are influenced by the fact that the lizard traveled at only three miles per hour; that this aisle was, in effect, the main street of this warehouse; that Dickensheet was traveling on the side of the aisle usually used by drivers traveling in the same direction. Under these circumstances a reasonable man could believe that it was not necessary to be able to observe the entire area in front of him, that the few persons who might be in that part of the aisle he could not see would keep a lookout for traffic, and that the vehicle was moving so slowly that there would be ample time for such persons to observe and to move or to signal their presence.

The plaintiff's statement of his other assignment of error is: "in failing to instruct the jury, in accordance with plaintiff's motion, that plaintiff would be re-

quired to repay the State Industrial Accident Commission out of the proceeds of any verdict."

The occurrence giving rise to alleged error is as follows: Plaintiff on direct examination was asked the amounts of his hospital bills. He refreshed his memory from some notes he had and then was able to state the names of the hospitals and the amounts of the bills. The following occurred during defendant's cross-examination of plaintiff:

"Q Now, where did you get the information on the back of this piece of paper as to the amounts of the various hospital bills?

"A From my attorney.

"Q You hadn't seen the bills prior to your attorney showing them to you, had you?

"A I beg your pardon?

"Q You hadn't seen these bills prior to your attorney's showing them to you?

"A No.

"Q The bills weren't sent to you?

"A No.

"Q To whom were they sent?

"A They were sent to the State.

"Q Oh, do you mean the State Industrial Accident Commission?

"A Yes.

"Q Oh. Then were these bills paid by the State Industrial Accident Commission?

"A Yes.

"MR. BROWN: Your Honor, I object to that question as being incompetent, irrelevant and immaterial.

"THE COURT: I am going to sustain this objection, and the jury will disregard the answer given to the question and —

"MR. BROWN: I am also going to move, your Honor, should the State Industrial Accident Commission have paid the bills it would be immaterial on the ground that the plaintiff would be required to repay the State Industrial Accident Commission in the event they were paid.

"MR. MORRELL: Now, I want this out —

"THE COURT: Now, just a minute.

"I have sustained an objection to the question and the answer that was given before you had an opportunity to interpose an objection, Mr. Brown, and I have done so and advised the jury that the question and the answer given by the witness are immaterial to any issues involved in this case; that that wasn't involved in this case. The question is was this man injured through the negligence of some other party, the nature and the extent of his injuries, and the amount of his damages.

"MR. MORRELL: Well, if the Court please, just for the record, plaintiff having produced this document to refresh his memory and having it in evidence, I think I had a right to ask him how he got the information and that is the way it was elicited.

"THE COURT: You are saying that the document is in evidence and that —

"MR. BROWN: I would be happy to show counsel all the bills that we have, your Honor, regarding the injuries, if that will help him any.

"THE COURT: This is really cumulative. Dr. Boyden testified to the reasonable value of his services and the hospital bills in here. This matter is already in evidence."

■■ Evidence that a plaintiff's medical expenses have been paid by the State Industrial Accident Commission is inadmissible. ORS 656.324. The Commis-

sion is entitled to repayment of medical expenses from a plaintiff who recovers the amount of such expenses from a third party. ORS 656.322.

The plaintiff now contends that, in addition to objecting to the question, he also requested the court to instruct the jury about plaintiff's obligation to repay the Commission. Plaintiff maintains this request is to be found in this statement by his counsel: "I am also going to move, your Honor, should the State Industrial Accident Commission have paid the bills it would be immaterial on the ground that the plaintiff would be required to repay the State Industrial Accident Commission in the event they were paid."

■ We are unable to determine what plaintiff's purpose was in making this statement. He may have been making the grounds for his objection more specific; he may have intended a motion to strike which might have been appropriate because an answer had been given. We do not require the same preciseness of expression from a trial lawyer's statements made in the heat of battle that we would from an office lawyer's contract drafted in the quiet reflection of his office. However, it is essential that the trial lawyer communicate his request in such words that the trial court is informed of the nature of counsel's request.

Assuming that the plaintiff would have been entitled to an instruction on plaintiff's obligation to repay, we find that the plaintiff's request to the court was not sufficiently certain so as to hold the trial court's failure to so instruct to be erroneous.

Affirmed.

LUSK, J., dissenting.

The defendant had a duty to exercise ordinary care towards its business invitee, the plaintiff. The

defendant's employee was operating a machine capable of causing serious injury to a person with whom it might come in contact. He chose to stand on the machine in a position from which his view ahead was obstructed to the extent that he was unable to see the plaintiff. Because he could not see the plaintiff he ran the machine into him and seriously injured him. I think that this was negligence as a matter of law: *Dormaier v. Jesse,* 237 Or 578, 391 P2d 645, this day decided. I would reverse the judgment for a new trial.